GATE CITY NATIONAL BANK, Respondent, v.
FRANK F. SCHMIDT, Appellant.

Kansas City Court of Appeals, December 9, 1912.

1. **BILLS AND NOTES: Indorser after Maturity: Collateral Security.** The payee of a note, who indorses and delivers it to another, after maturity, as collateral security for the payment of another note, made by the payor, cannot be regarded as an accommodation indorser. His position is the same as it would have been had he, as payee, made an outright sale of the note.

2. ——: **Notice of Protest: Accommodation: Indorser.** An indorser for whose accommodation a loan is made and who, on the dishonor of the note, is not entitled to due presentment and notice of protest, is one whose real relation to the maker is that of primary debtor.

3. ——: **Indorsement after Maturity.** The indorsement of a negotiable promissory note by the payee after maturity is equivalent to drawing a new bill at sight and the same diligence in making demand and giving notice is required to charge the indorser.

4. ——: **Demand: Reasonable Time.** When a note is indorsed after maturity, it becomes a note payable on demand, and demand must be made within a reasonable time. The delay of a year would be unreasonable and operate to discharge the indorser.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover*, Judge.

REVERSED.

*Chas. R. Pence* for appellant.

*McCune, Harding, Brown & Murphy* for respondent.

JOHNSON, J.—This is an action against the indorser of a negotiable promissory note. The material facts are as follows:

Defendant Schmidt sold a restaurant in Kansas City to Frank J. Turnbull, Jr., and Ormus L. Brockett for $6000 and accepted the promissory notes of the vendees for part of the purchase price and at the same time received a chattel mortgage executed by them to secure the payment of the notes. The mortgage covered all the personal property included in the sale. The notes and mortgage were executed and delivered to defendant June 15, 1905. All of the notes except the one in suit were paid by Turnbull and Brockett and their vendee, Frank Hubbard, to whom they afterwards sold the business.

The note in suit was for the principal sum of $1500, bore interest from date at eight per cent per annum and by its terms fell due July 1, 1906. The interest was paid to June 30, 1906, and a payment of $300, on the principal was made June 25, 1906. At the time of those payments, which were indorsed on the back of the instrument, defendant indorsed an agreement to extend the time for the payment of the remainder to July 1, 1907. The note was not paid on the latter date and though Hubbard, in purchasing the business, had not assumed the payment of the indebtedness secured by the chattel mortgage, he had bought the property subject to that indebtedness and was the person to whom defendant was looking for the payment thereof. The amount due on the note on July 1, 1907, was about $1300 and being pressed by defendant for payment, Hubbard applied to the plaintiff bank for a loan of that amount and plaintiff agreed to make the loan on condition that its repayment be secured by an assignment of the note in suit and the chattel mortgage to the bank as collateral security. On July 8, 1907, Hubbard accompanied by defendant and his attorney, went to the bank and closed the transaction. Hubbard executed his promissory note to the bank for $1300, due in four months, and with the proceeds paid defendant the amount of the note in

suit, whereupon defendant indorsed his name on the back and delivered the note and mortgage to the bank with the understanding that they would be held as collateral security for Hubbard's note. Defendant admits he was present during the entire transaction. He is a man of experience in business affairs and we shall not listen to his contention that he did not know he was assuming a liability to the bank when he indorsed the note without restrictions and delivered it to the bank. We shall assume that he knew Hubbard was borrowing money from the bank partly on the credit of his indorsement and that he lent his credit to Hubbard for the purpose of obtaining the money due him. Hubbard did not pay his note in full at maturity. He made a partial payment and obtained a renewal and continued to make partial payments until he had reduced the loan to $875, when he quit paying and became a bankrupt. Plaintiff then presented the note in suit at the bank where, by its terms, it was payable, and demanded payment. The demand was refused and thereupon the note was duly protested and notice of protest was given defendant. This occurred July 7, 1908, before the maturity of the last renewal note Hubbard had given plaintiff and was the first demand plaintiff made for the payment of the note in suit. The explanation offered by plaintiff for this long delay is that it was orally agreed by plaintiff, Hubbard and defendant when the loan was made, that Hubbard was to be allowed to pay off the loan gradually and to be granted necessary renewals of his note.

There are other facts in the record but those stated control the disposition of the case. The circuit court tried the case without the aid of a jury and rendered judgment for plaintiff. Defendant appealed. Counsel for plaintiff rely on certain provisions of the act relating to Negotiable Instruments enacted by the Legislature in 1905 (sec. 9971, *et seq.*, R. S. 1909) to support their position that defendant should be held as an

indorser of the note in suit, but we find that law has no application to this case. The act did not go into effect until June 16, 1905. [See Session Acts, 1905, pp. 243, 265 and 330.] It contains the express enactment that "the provisions of this chapter do not apply to negotiable instruments made and delivered prior to the passage hereof." [Sec. 10164, R. S. 1909.]

The note in suit was made and delivered June 15, 1905, the day before the act went into effect. True the obligation of defendant as an indorser did not arise until after the act had become effective and the indorsement constituted a new and independent contract, but that contract grew out of the note which became an integral part of it and an action for the enforcement of such contract falls within the purview of the provision quoted which clearly was intended to except all negotiable instruments in existence at the time of the enactment of the new law from being, or in any wise becoming, subject to the operation of its provisions. The rights of the parties, therefore, are to be measured by the rules of law pertaining to negotiable instruments that were in force before the new act became a law.

Defendant, the payee of the note in suit, indorsed and delivered it to plaintiff after maturity as collateral security for the repayment of a loan made by plaintiff to Hubbard in part, at least, on the credit of that indorsement. Hubbard used the proceeds of the loan to pay defendant but instead of cancelling the debt and the note which evidenced it, defendant agreed by his indorsement that the note and its incident, the chattel mortgage, should not be discharged but should be kept alive and that the legal title to them should vest in plaintiff as security for Hubbard's debt to plaintiff. Defendant cannot be regarded as the party for whose accommodation the loan to Hubbard was made. He received the proceeds of Hubbard's loan, not as an accommodation from Hubbard but as the con-

·sideration he was entitled to receive for the transfer of his title in the note and mortgage to plaintiff. His position is the same as it would have been had he, as payee, made an outright sale of the note to plaintiff after maturity and effectuated such sale by his indorsement and transfer of the note. An indorser for whose accommodation a loan is made and who on the dishonor of the note is not entitled to due presentment and notice of protest, is one whose real relation to the maker is that of the primary debtor—the proper party to pay the note—and the reason he is not entitled to due presentment and notice is that "he can suffer no injury or loss by reason of the want of due presentment, since if it had been dishonored and he had been obliged to pay it, he could have no recourse over against the maker, any more than a drawer of a bill of exchange would have against his accommodation acceptor, in case of a dishonor by the latter." [Story on Promissory Notes (7 Ed.), sec. 268; 1 Am. & Eng. Ency. Law (2 Ed.), 339; Mosser v. Criswell, 150 Pa. St. 409.] In the case last cited, it is said:

"To have the money raised on a new note made by defendant was in a certain popular sense an accommodation, that is, a convenience, to the plaintiff, just as it is a convenience to a creditor who wants his money but cannot get it from his debtor in cash, to get payment by a note on which he can raise the money temporarily, though at the risk of· an indorsement which he may ultimately have to pay. But this is very far from what the law means by accommodation paper."

If, in order to escape liability on account of his indorsement of the collateral note, defendant had paid Hubbard's note to plaintiff, he would have been entitled to recover the amount thus paid from Hubbard, the maker and the existence of such right would be utterly incompatible with the idea that he was an indorser for his own accommodation. An indorsement

of a negotiable promissory note by the payee after maturity "is the equivalent to drawing a new bill at sight and the same diligence in making demand and giving notice is required to charge the indorser." [Light v. Kingsbury, 50 Mo. 331; Davis v. Francisco, 11 Mo. 572; Armstrong v. Armstrong, 36 Mo. 225; Beeler v. Frost, 70 Mo. 185; Jacobs v. Gibson, 77 Mo. App. 244.]

Such demand and notice must be made and given in a reasonable time and, as is said in Foley v. Brewing Co., 61 N. J. l. c. 430, the term, "a reasonable time," has reference to the ability of the holder and excludes any notion of credit to or indulgence of the maker. The rule thus is stated by SHAW, C. J., in Colt v. Barnard, 18 Pick. (Mass.) 260: "If it be asked, at what time payment of the note shall be demanded, the day originally named for payment having passed, the answer is obvious. As between maker and promisee, a note is payable on demand, at any time after it becomes due. When it is indorsed after due, it is in legal effect a note on demand, and is to be so understood by the parties, as if written 'on demand.' In that case, the law is well settled, the demand must be made within reasonable time, and if not paid, immediate notice of nonpayment must be given to the indorser."

Under this rule we do not hesitate in saying that a delay of a year in making demand and giving notice of dishonor was unreasonable and operated to discharge the defendant from his liability as indorser. The evidence of an oral agreement between plaintiff and defendant which was antecedent to or contemporaneous with the indorsement cannot be considered, since the only effect claimed for such agreement is that it varied the contract implied by law from the indorsement. The indorsement being in writing, the contract implied must be treated in all its terms as a written contract invulnerable to attack by proof of a contemporaneous oral agreement of different tenor.

[Rodney v. Wilson, 67 Mo. 123; Beeler v. Frost, supra; 1 Daniels Negotiable Instruments (5 Ed.), 717, 718.] We regard as conclusive the following expression of the Supreme Court on this subject in Rodney v. Wilson, supra:

"It is evident that the verbal contract on which plaintiff relied, and the contract implied by the indorsement, are inconsistent with each other, and cannot stand together. One is an undertaking to be bound absolutely, the other an undertaking to be bound conditionally. The proof of the former has the effect of varying the latter. The rule is universal, that all prior and contemporaneous agreements are merged in the written undertaking. The contemporaneous parol agreement to be bound absolutely, that is, without demand and notice, must, therefore, yield to the agreement which the law declares arises out of the written indorsement, which is to be bound only after demand and notice. If the indorsee may thus qualify the legal effect of a regular blank indorsement, why may not the indorser be permitted, on the other hand, to escape all liability by showing that his indorsement was without recourse? [Charles v. Denis, 42 Wis. 56; Barry v. Morse, 3 N. H. 132; Bank of Albion v. Smith, 27 Barb. 489; Wilson v. Black, 6 Blackf. 509; Campbell v. Robbins, 29. Ind. 271, *contra,* Barclay v. Wesver, 19 Penn St. 396.] In all such cases as the present, we think the policy of the law requires that the paper 'shall tell its own story.'"

The judgment is reversed. All concur.